CENTRAL NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10927.   Promulgated May 4, 1928.

*Henry J. Richardson, Esq.*, for the petitioner.
*Clark T. Brown, Esq.*, for the respondent.

OPINION.

SIEFKIN: Before proceeding to the principal issue involved in the proceeding it is necessary to consider two questions: First, is the petitioner the proper party to institute the proceeding, and, second, what years are involved.

The proceeding was brought by the Central National Bank by M. R. Sturtevant as vice president. It was a national banking institution but was voluntarily liquidated in 1920, when its assets were transferred to the Liberty Central Trust Co.

It is well settled that a national bank which has gone into voluntary liquidation will continue to exist as a body corporate for the purpose of suing or being sued until its affairs are completely settled.

In the case of *National Bank* v. *Insurance Co.*, 104 U. S. 54, 73, the following language is used by the court:

It is to be observed that the sections under which the proceedings took place which, it is claimed, put an end to the corporate existence of the bank, do not refer, in terms, to a dissolution of the corporation, and there is nothing in the language which suggests it, in the technical sense in which it is used here as a defense. The association goes into liquidation and is closed. It is required to give notice that it is closing up its affairs, and in order to do so completely and effectually, to notify its creditors to present their claims for payment. And the redemption of its bonds given to secure the payment of its circulating notes, by the required deposit of money in the treasury, is limited in its effect to a discharge of the association and its shareholders from all liability upon its circulating notes. The very purpose of the liquidation provided for is to pay the debts of the corporation, that the remainder of the assets, being reduced to money, may be distributed among the stockholders. That distribution cannot take place, with any show of justice, and according to the intent of the law, until all liabilities to creditors have been honestly met and paid. If there are claims made which the directors of the association are not willing to acknowledge as just debts, there is nothing in the statute which is inconsistent with the rights of the claimant to obtain a judicial determination of the controversy by process against the association, nor with that of the association to collect by suit debts due to it. It is clearly, we think, the intention of the law that it should continue to exist, as a person in law, capable of suing and being sued, until its affairs and business are completely settled. The proceeding prescribed by the law seems to resemble, not

the technical dissolution of a corporation, without any saving as to the common-law consequences, but rather that of the dissolution of a copartnership, which, nevertheless, continues to subsist for the purpose of liquidation and winding up its business.

We conclude that the proceeding was properly brought by this petitioner.

The original petition in this proceeding was filed as the result of a 60-day letter advising the petitioner of a deficiency of $3,181.47 for 1917, and overassessments for 1918 and 1919. The petition stated:

The taxes in controversy are income and profits taxes for the calendar year 1917 and are less than $10,000, and also affecting the years 1918 and 1919.

The respondent, in his answer, admitted the above allegation in part, but stated:

Except that the taxes in controversy do not involve the years 1918 and 1919 in view of the fact that no deficiencies have been determined for these two years.

The respondent also raised the question of our jurisdiction over the years 1918 and 1919 in the following proposition of law:

The Board of Tax Appeals is without jurisdiction to review for the purpose of determining a different amount of overassessment from that of the Commissioner, the amount of an overassessment so determined for any year.

The original representative of the petitioner was succeeded by present counsel who obtained leave to file and did file an amended petition which alleged:

The taxes in controversy are income and profits taxes for the calendar years 1917, 1918 and 1919 and amount to $16,580.69 for the year 1917, being a proposed additional tax of $3,181.47 and a rejection of claim for abatement in the amount of $13,399.22; $65,416.56 for the year 1918 being the rejection of claim for abatement to that extent; and $11,050.27 for the year 1919 being a rejection of claim for abatement to that extent.

The answer to the amended petition denied that the Board had jurisdiction over the years 1918 and 1919, but at the hearing this denial was withdrawn and it was admitted that all three years were in controversy.

From the deficiency letter and from the evidence introduced at the hearing, it is clear that the deficiency letter constituted a final action by the respondent on claims for abatement for the years 1918 and 1919, and gave the Board jurisdiction as to those years. See *Friend M. Aiken*, 10 B. T. A. 553.

Turning now to the question as to whether the deficiencies proposed are barred by the statute of limitations. The petitioner's contentions can be divided into two parts: First, that the various instruments purporting to extend the time for the running of the statute were signed by various persons who were formerly officers of the

petitioner before its liquidation and who, the petitioner contends, were without authority to do any acts which might increase or extend the liability of stockholders of the bank; and, second, the petitioner relies upon the proposition of law laid down in *United States* v. *Cabot* (Supreme Court D. C., June 15, 1926), 5 Am. Fed. Tax Rep. 6172; *United States* v. *Whyel*, 19 Fed. (2d) 260, and our former holding in *Reliance Manufacturing Co.*, 7 B. T. A. 583.

With respect to the first contention, the petitioner argues that the officers of a national bank in liquidation have no authority to bind the stockholders by the transaction of any business except that necessarily involved in the winding up of its affairs; that the sole extent of their authority is one which may be implied in the duty of liquidation unless such authority has been expressly conferred by the shareholders. If we should follow the petitioner's argument to its necessary conclusion, the result would be that the appeal to this Board might be taken by parties representing the liquidated national bank, but our determination of the deficiency would be limited to an inquiry as to those facts only which were to the benefit of the bank and we would be precluded from inquiring into any facts to the detriment of the bank or ultimately to its stockholders. The statement of the proposition carries its own refutation. It is obvious that if the Board has jurisdiction of the proceeding, and we hold that it has, its inquiry may be within the bounds prescribed by the statute which gives us jurisdiction, limited only by the issues which the parties present to us by their pleadings. It is also difficult to believe that the rule of the courts heretofore referred to in *National Bank* v. *Insurance Co.*, *supra*, providing for the continuance of the bank until its affairs are completely settled, and the Act of Congress under which the decision is laid down, could have contemplated a settlement to the benefit of the bank only. When the United States is the party with whom the settlement is being made and the subject matter of the settlement is a tax, the arguments in favor of a complete settlement are at least as strong, if not stronger, than where the bank is dealing with private individuals.

The evidence shows that prior to the liquidation of the petitioner, Kingsbury, who signed the consents in question, was assistant cashier of the petitioner and was never discharged. No evidence is submitted to show that he was not authorized to execute such an instrument and we hold that they were binding upon the petitioner and that assessment having been made within the time prescribed by sections 277 and 278 of the Revenue Act of 1924, the Commissioner is allowed six years after assessment within which to make collections. See section 278 (d), Revenue Act of 1924.

With respect to the petitioner's second point, we adhere to our decision in *Art Metal Works*, 9 B. T. A. 491, which overruled our prior decision in *Reliance Manufacturing Co.*, 7 B. T. A. 583.

> *The proceeding will be reinstated on the general calendar for hearing in due course.*